COMMONWEALTH *vs.* CHARLES F. WHITE.

Franklin. May 5, 1977. — December 30, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Search and Seizure. Probable Cause. Constitutional Law,* Search and seizure, Probable cause, Waiver of constitutional rights. *Practice, Criminal,* Suppression of evidence. *Waiver.*

At the trial of a defendant charged with possession of certain controlled substances with intent to distribute, evidence that the defendant, who had been arrested for driving under the influence of alcohol or drugs, had unsuccessfully attempted to call an attorney after being given Miranda warnings and that the officer to whom the defendant made

statements in response to the officer's questioning did not regard the defendant as having waived his right to counsel or to remain silent warranted suppression of the statements. [137-138]

Statements obtained in violation of a defendant's constitutional rights to counsel and to remain silent could not be used for the purpose of establishing probable cause to obtain a search warrant. [138-139]

Where the only allegations in an affidavit in support of a search warrant for an automobile, other than statements obtained in violation of a defendant's constitutional rights, were that the defendant was under arrest for driving under the influence and that a marihuana cigarette was found in his shirt pocket, the affidavit failed to establish probable cause for the search. [139-140]

The mere fact that a defendant charged with possession with intent to distribute controlled substances was arrested for driving under the influence of an intoxicant did not constitute probable cause for a warrantless search of his automobile. [140-142]


INDICTMENTS found and returned in the Superior Court on September 9, 1975.

A pre-trial motion to suppress evidence was heard by *Moriarty*, J., and the cases were heard by *Cross*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Robert S. Cohen* for the defendant.

*John M. Finn*, Assistant District Attorney (*Stephen R. Kaplan*, Assistant District Attorney, with him) for the Commonwealth.

LIACOS, J.  In a jury waived trial held pursuant to the provisions of G. L. c. 278, §§ 33A-33G, the defendant was found guilty on four indictments charging him with unlawful possession with intent to distribute controlled substances, namely, marihuana (Class D); cocaine (Class B); amphetamines (Class B); and LSD (Class C). G. L. c. 94C, § 31. He was sentenced to not more than seven nor less than five years at the Massachusetts Correctional Institution at Walpole as to three of the convictions, the sentences to run concurrently. The marihuana conviction was filed. The defendant appealed to the Appeals Court and we transferred the case here on our motion. We reverse the convictions.

The only point we need consider on this appeal is whether the judge was correct in denying the defendant's motion to suppress evidence of controlled substances, related paraphernalia, and the contents of a strongbox ($3,195) found in a search of the trunk of the defendant's car. The search was pursuant to a search warrant, the affidavit in support of which was based on statements which the judge held should be suppressed as they were obtained in violation of the commands of *Miranda* v. *Arizona,* 384 U.S. 436 (1966). The underlying facts found after a hearing on the defendant's motion are set forth in the judge's findings and rulings on the matter. We state the facts, as embodied therein, necessary for our decision.

At approximately 2 A.M., on March 28, 1975, the chief of police of the town of Ashfield responded to a report of a motor vehicle accident. The defendant's automobile had apparently gone off the road over an embankment, hitting several posts. The chief of police found the defendant in his vehicle alone trying to get his car back on the road. The defendant's behavior and appearance gave the chief reason to believe that the defendant was operating under the influence of drugs or alcohol, or both, whereupon he ordered the defendant out of the car, placed him under arrest for operating under the influence, and gave him the warnings required by *Miranda* v. *Arizona, supra.* At this point, he ordered the defendant to walk up to the police cruiser, a task the defendant accomplished without assistance, but with some degree of staggering.

Responding to a call for assistance from the chief of police, an officer of the State police met him at the accident scene. After arranging to have the defendant's car towed to the State police barracks at Shelburne Falls, he returned to the barracks. The chief of police had transported the defendant to the same State police barracks for the purpose of having a breathalyzer test administered to the defendant. When the trooper arrived at the barracks, he read the defendant his Miranda rights. He advised the defendant of his right to a breathalyzer test and of the consequences of his

refusal to submit to the same, G. L. c. 90, § 24 (1) (f), of his right to a blood test by a physician of his own choice, and of his right to make a telephone call. The defendant agreed to submit to the breathalyzer test.

Prior to the administration of the test, the defendant attempted to retain the services of an attorney through the use of a coin operated telephone. In the course of the attempts to reach an attorney the defendant experienced some difficulty, dropping coins on the floor several times. There was evidence from the trooper that the defendant "bounce[d] around," "climb[ed] the walls," was scratching himself in an unusual way, and "didn't know what he was doing." After these attempts to reach an attorney were unsuccessful, the defendant took the test, the results of which were sufficient to invoke the statutory presumption that the defendant was driving under the influence of intoxicating liquor. G. L. c. 90, § 24 (1) (e).

At this point, the trooper prepared to place the defendant in a holding cell. Before doing so, the trooper searched the defendant's person and discovered what appeared to be a marihuana cigarette in the defendant's shirt pocket. The trooper then informed the defendant that he would also be charged with possession of marihuana. He gave the defendant his Miranda warnings once more. The defendant responded that he saw nothing wrong with the possession of one marihuana cigarette. The trooper then asked the defendant if he had any other marihuana on his person or in his car, and the defendant replied that he had some marihuana in his car. The defendant also stated that he could name some "biggies," to which the trooper replied that he did not wish to inquire any further.

Armed with the information gained from the defendant's statements, the trooper prepared an application for a search warrant to search the defendant's vehicle, by then located at the State police barracks. The affidavit stated in material part: "On March 28, 1975 I assisted Chief Walter Zalenski [sic] Ashfield PD with a subject under arrest for operating under the influence. I gave the prisoner, Charles F. White

his miranda [*sic*] rights. I than [*sic*] searched the prisoner and found (1) one marijuana cigarette in the breast pocket of his tee shirt colorgreen [*sic*]. I questioned the prisoner regarding the marijuana cigarette. He, Charles F. White, stated that he had some marijuana in his vehicle which he had been driving at the time of his arrest."

A warrant was issued on the basis of the affidavit. A search of the trunk of the vehicle pursuant thereto resulted in the discovery of a substantial quantity of controlled substances, related paraphernalia, such as glassine bags and cigarette wrappers and a strongbox containing a substantial amount of cash. It was this property as well as the defendant's statements that was the subject of the defendant's suppression motion.

The judge concluded that the defendant's statements must be suppressed as the Commonwealth had not met its heavy burden of demonstrating that the defendant had knowingly or intelligently waived his right to counsel or his privilege against self-incrimination. Relying primarily on *Commonwealth* v. *Hosey,* 368 Mass. 571 (1975), he reasoned that the defendant's condition precluded him from making an effective waiver. Despite this ruling, however, he declined to order the suppression of the physical objects, including the controlled substances seized in the defendant's car. The judge reasoned that the defendant's statements could be used in support of the application for the search warrant since he did not believe the policies behind the exclusionary rule would be furthered by its application in this context. He found that the officers were scrupulous in observing the defendant's rights and that the statement as to the location of the controlled substances in the vehicle did not come about as a result of police subterfuge or any purposeful attempt to subvert the defendant's rights.

The essence of the defendant's arguments here may be summarized as follows: (a) the judge correctly ordered the suppression of the defendant's inculpatory statements; (b) the judge correctly ruled that without the defendant's statements the application for the warrant failed to establish

probable cause; and (c) since the warrant was invalid, the search of the car was illegal and the objects seized therein should have been suppressed. The Commonwealth's answer to these claims is that (a) the judge was wrong in ordering suppression of the defendant's statements; (b) the affidavit in support of the search warrant, even without such statements, demonstrates probable cause (contrary to the judge's ruling); and (c) if the warrant is ruled invalid, the search is still valid as a warrantless car search or, alternatively, as an inventory search of an impounded vehicle. We turn first to the threshold issue of the propriety of the suppression of the defendant's statements, and the effect thereof.

1. The Commonwealth appears to urge that we reexamine the factual determination of the judge relative to the suppression of the defendant's statements. The claim is that the judge erroneously found that the defendant did not intelligently and voluntarily waive his rights under *Miranda*. It has sought to distinguish *Commonwealth* v. *Hosey, supra,* relied on by the judge below, in numerous ways and point to our recent decision in *Commonwealth* v. *Fielding,* 371 Mass. 97 (1976), as limiting the *Hosey* case to extreme circumstances of loss of cognitive ability.

It is well established that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights," *Johnson* v. *Zerbst,* 304 U.S. 458, 464 (1938), quoting from *Aetna Ins. Co.* v. *Kennedy,* 301 U.S. 389, 393 (1937). Thus, when inculpatory statements are made by a defendant in a situation like that presented in the instant case, "a heavy burden rests on the [prosecution] to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda, supra* at 475. *Commonwealth* v. *Cain,* 361 Mass. 224, 228 (1972).

The Commonwealth's argument founders on the well established principle of appellate review that where, as here, subsidiary findings of fact have been made by the judge below, they will be accepted by this court absent clear error. *Commonwealth* v. *Hosey, supra.* See *Commonwealth*

v. *Murphy,* 362 Mass. 542 (1972). Such findings as to intelligent and voluntary waiver, or the absence thereof, are entitled to substantial deference by this court. *Commonwealth* v. *Roy,* 2 Mass. App. Ct. 14, 19 (1974). Having heard the evidence, the judge specifically found that the defendant had "affirmatively demonstrated a desire for the assistance of counsel" and had "at no time indicated . . . he had changed his mind" in that regard. The judge also found that the State trooper did not regard the defendant as having waived his right to silence or his right to counsel. On those facts alone it would be a difficult task for the Commonwealth to establish that the defendant had waived his right to counsel. *Brewer* v. *Williams,* 430 U.S. 387 (1977). If one considers, as did the judge, the evidence of the defendant's being under the influence, established through the breathalyzer test, and his behavior, it is clear that the more prudent and constitutionally preferable course would have been for the police to withhold any further questioning "until [the defendant] was clearly capable of responding intelligently." *Commonwealth* v. *Hosey, supra* at 579. While the case before us is not so compelling as was the situation in *Hosey,* we cannot conclude that the judge erred in finding that the Commonwealth's heavy burden had not been satisfied.

2. It follows that we must then consider whether such statements, despite their inadmissibility at trial, could be used for the purpose of establishing probable cause sufficient to obtain a valid search warrant. Unlike the judge below, we conclude that they may not.

In *Commonwealth* v. *Hall,* 366 Mass. 790, 795 (1975), we recognized that evidence obtained in violation of constitutional guaranties against illegal search and seizure may not be considered in determining whether there was probable cause to obtain a warrant. More recently, in *Commonwealth* v. *Haas,* 373 Mass. 545 (1977), we held that evidence obtained in violation of the principles laid down in *Miranda* v. *Arizona, supra,* may not be considered in deter-

mining whether there is probable cause to make an arrest and thus validate a search made incident to the arrest.

From these cases it follows that neither may such statements be used for the purpose of considering whether there was probable cause to obtain a search warrant. To hold otherwise would, in effect, sanction the initial violations of constitutional guaranties which the judge found took place in the police barracks. The need to prevent such violations from escaping review underlies the so called "fruit of the poisonous tree" doctrine set forth in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920), and *Nardone v. United States*, 308 U.S. 338 (1939). Although this exact issue has not been determined by the Supreme Court, but cf. *Michigan v. Tucker*, 417 U.S. 433 (1974), we believe that *Haas* controls the issue in this Commonwealth. The policies underlying the "fruits" doctrine in the search and seizure area are even more compelling in the instant case. Evidence obtained in violation of the guaranty against unreasonable searches and seizures is more often than not reliable, probative evidence. *Schneckloth v. Bustamonte*, 412 U.S. 218, 250 (1973) (Powell, J., concurring). While evidence obtained in violation of the Miranda guidelines may be similarly probative and reliable, there is a far more significant danger that it will not be so. *Miranda v. Arizona, supra* at 447, 455 & n.24.

3. The judge ruled that the existence of probable cause to support the search warrant "unquestionably depended upon the statement of the defendant, quoted in the affidavit, that the car did contain such contraband." We agree. It does not appear that the affidavit, considered without the tainted evidence, is sufficient to establish probable cause. Cf. *Commonwealth v. Hall, supra*. Without the defendant's admission, the only evidence for the magistrate to consider was the allegation that the defendant was under arrest for driving under the influence and the marihuana cigarette that was found in his shirt pocket.

The lowest threshold of probable cause which we have previously accepted in a case of this kind was in *Common-*

*wealth* v. *Miller,* 366 Mass. 387 (1974). In that case the facts were that the defendant was found with a small quantity of marihuana and uttered words which arguably indicated a consciousness of criminal conduct. A majority of the court found these facts sufficient to establish probable cause over the dissent of three Justices. In this case even less is present. Neither the possession of the small quantity of marihuana nor the fact that the defendant was thought to be operating under the influence of alcohol sufficiently establishes a nexus between the criminal activity sought to be investigated and the trunk of the vehicle. There is no necessary correlation between the untainted allegations in the affidavit and the presence of controlled substances in the defendant's car. At best, issuance of a warrant on such information alone would be a "hunch" on the part of the issuing magistrate, *Commonwealth* v. *Miller, supra* (Hennessey, J., dissenting), a level of information not on a par with that required by the Constitution. This much was recognized by the judge and we see no reason to disagree.

4. This does not end our inquiry however. We indicated in *Commonwealth* v. *Blackburn,* 354 Mass. 200, 203 (1968), that a police officer should not be penalized for obtaining a search warrant, later ruled invalid, when there were adequate grounds to conduct a warrantless search. See *United States* v. *Darrow,* 499 F.2d 64, 68 (7th Cir. 1974). We consider whether the search here could be vindicated as a valid warrantless search.

In this case, no evidence was presented at the hearing on the motion which would justify this court in upholding the search as an inventory search, *South Dakota* v. *Opperman,* 428 U.S. 364 (1976);[1] *Cady* v. *Dombrowski,* 413 U.S. 433 (1973) (evidence of regular practice) or as the automobile equivalent of a "stop and frisk" search, *Commonwealth* v. *Almeida,* 373 Mass. 266 (1977). Nor can it be justified as a

---

[1] We intimate no opinion as to whether we would choose to follow the rule in *Opperman,* since it is not applicable to the facts here. See *State* v. *Opperman,* 89 S.D. 25 (1976).

search incident to arrest. See *Chimel* v. *California,* 395 U.S. 752 (1969). Thus the search, if it is to be sustained at all, must be upheld as a permissible warrantless search of an automobile made on the basis of probable cause.

While the law concerning the proper parameters of warrantless automobile searches continues to be an area of vexing inconsistency and illogic, see *Commonwealth* v. *Haefeli,* 361 Mass. 271, 278 (1972), we have adhered to the view expressed in *Chambers* v. *Maroney,* 399 U.S. 42, 52 (1970), that "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." See *Commonwealth* v. *Miller, supra* (Hennessey, J., dissenting). *Chambers* also allows such searches based on probable cause to be conducted at the station house as opposed to requiring that they be made at the scene where the police initially encounter the motor vehicle. However, we have understood *Chambers* read in conjunction with *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971), to require that the determination as to probable cause must be made at the time the automobile is first stopped, rather than on facts as may become available at a later time. *Commonwealth* v. *Rand,* 363 Mass. 554, 559 (1973). In this case, the facts available at the time of the first encounter would allow the officer to conclude that the defendant was driving under the influence of alcohol. Anything else was found at a point in time beyond that which we may permissibly consider under *Chambers* and *Coolidge. Commonwealth* v. *Rand, supra.* See *United States* v. *Edwards,* 415 U.S. 800 (1974).

We do not believe that the mere fact that a person is apprehended for driving under the influence of an intoxicant is, without more, sufficient to allow a prudent man to conclude that a crime requiring a search of the automobile, its trunk, and the interior of a strongbox located therein has been committed. *Commonwealth* v. *Miller, supra* (Hen-

nessey, J., dissenting). Cf. *United States* v. *Ragsdale*, 470 F.2d 24 (5th Cir. 1972). See *United States* v. *Chadwick*, 433 U.S. 1 (1977). It therefore follows that a warrantless search cannot be considered permissible in these circumstances and that the judgments of the court below must be reversed.

*Judgments reversed.*

*Findings set aside.*