## COMMONWEALTH *vs.* DONALD MARTIN.

Suffolk. December 8, 2004. - May 12, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Fruits of illegal search. *Evidence,* Result of illegal search, Firearm. *Firearms.*

This court concluded that the United States Supreme Court's construction (in *United States* v. *Patane,* 542 U.S. 630 [2004]) of the Miranda rule, which was intended to secure the privilege guaranteed by the Fifth Amendment to the United States Constitution against compelled incrimination in the context of inherently coercive custodial interrogations, was no longer adequate to safeguard the parallel but broader protections afforded Massachusetts citizens by art. 12 of the Declaration of Rights of the Massachusetts Constitution, and therefore, this court adopted a common-law rule governing the admissibility of physical evidence obtained in such circumstances, namely, that such evidence, if derived from unwarned statements where Miranda warnings would have been required by Federal law in order for those statements to be admissible, is presumptively excludable from evidence at a criminal trial as "fruit" of the improper failure to provide such warnings. [217-223]

INDICTMENTS found and returned in the Superior Court Department on June 18, 2002.

A pretrial motion to suppress evidence was heard by *Janet L. Sanders,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Cowin,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her.

*Christopher Pohl,* Assistant District Attorney (*Timothy Pomarole* with him) for the Commonwealth.

*Debra S. Krupp,* Committee for Public Counsel Services (*Joan C. Stanley* with her) for the defendant.

CORDY, J. The question presented in this case is whether the failure to give Miranda warnings to a suspect in custody requires suppression of physical evidence derived from an unwarned statement he made in response to police interrogation. Prior to

the recent decision of the United States Supreme Court in *United States* v. *Patane*, 542 U.S. 630 (2004) (*Patane*), the answer (at least in Massachusetts) would clearly have been "yes." We have consistently held that statements obtained in violation of the principles laid down in *Miranda* v. *Arizona*, 384 U.S. 436 (1966), are not admissible in evidence themselves, and may not properly be used to secure additional evidence for use at trial. See *Commonwealth* v. *White*, 374 Mass. 132, 138-139 (1977), aff'd, 439 U.S. 280 (1978) (statements obtained in absence of intelligent and voluntary waiver of Miranda rights may not be considered in determining probable cause to obtain search warrant); *Commonwealth* v. *Haas*, 373 Mass. 545 (1977), *S.C.*, 398 Mass. 806 (1986) (unwarned statements solicited from suspect in custody may not be considered in determining probable cause for arrest and search incident to it). "To hold otherwise would, in effect, sanction the initial violations of constitutional guaranties . . . . The need to prevent such violations from escaping review underlies the so called 'fruit of the poisonous tree' doctrine . . . ." *Commonwealth* v. *White, supra* at 139. See *Commonwealth* v. *DiMarzio*, 436 Mass. 1012, 1013 (2002) (marijuana located as result of unwarned statement made after defendant placed in custody properly suppressed as "fruit of the poisonous tree"); *Commonwealth* v. *Barros*, 56 Mass. App. Ct. 675, 678-679 (2002) (evidence found in defendant's bedroom as result of unwarned custodial questioning suppressed).

In *Patane, supra* at 640, quoting *Dickerson* v. *United States*, 530 U.S. 428, 443-444 (2000), the Supreme Court, in a five-to-four decision, held that, while "unwarned statements may not be used in evidence in the prosecution's case in chief," "the Self-Incrimination Clause . . . is not implicated by the introduction at trial of physical evidence resulting" from such statements so long as they were not the product of improper coercion (i.e., were "voluntary"). *Patane, supra* at 634. Consequently, the Court concluded that the exclusion of physical evidence obtained in violation of Miranda principles is not required by the Fifth Amendment to the United States Constitution.

While the reasoning in our cases regarding the application of the exclusionary rule to evidence derived from Miranda violations has been grounded principally in Fifth Amendment

jurisprudence, the protections afforded the privilege against self-incrimination by the Miranda rule and its application also extend to rights protected by art. 12 of the Declaration of Rights of the Massachusetts Constitution. *Commonwealth* v. *Snyder*, 413 Mass. 521, 531 (1992) ("Miranda warnings furnish information about State constitutional rights as well as rights contained in the Constitution of the United States"). Because we conclude that the Supreme Court's construction of the Miranda rule, which was intended to secure the privilege against compelled incrimination in the context of inherently coercive custodial interrogations, is no longer adequate to safeguard the parallel but broader protections afforded Massachusetts citizens by art. 12, we adopt a common-law rule governing the admissibility of physical evidence obtained in these circumstances. Such evidence, if derived from unwarned statements where Miranda warnings would have been required by Federal law in order for them to be admissible, is presumptively excludable from evidence at trial as "fruit" of the improper failure to provide such warnings.

1. *Background.* The following facts are undisputed. On the morning of March 26, 2002, police were dispatched to an apartment in the Roxbury section of Boston following a "911" call from a person (complainant) who identified himself and claimed that a man living at that address had just threatened him with a gun. Based on the description provided by the complainant, the police determined that the person who had threatened him was probably Martin. After securing the building, the police attempted to get Martin to open his apartment door, but he refused. After nearly thirty minutes, a Boston detective convinced Martin to surrender, at which point he opened his apartment door, stepped into the hallway, and was handcuffed. Police then entered Martin's apartment and conducted a protective sweep. After confirming that no one else was there, the police left the apartment but remained outside. The complainant then positively identified Martin as the person who had threatened him.

Although clearly in custody at this point, Martin was not advised of his rights under *Miranda* v. *Arizona, supra.* Rather, the detective explained that he would apply for a search warrant

to find the firearm, but that if Martin wanted to expedite the process, he could tell the detective where the firearm was located. Martin responded to this entreaty by telling the detective that he had had problems with the complainant in the past. The detective responded by assuring Martin that the police "would look into that," but reiterated that his main concern was locating the firearm. Martin then told the detective that the firearm was in his bedroom closet. The detective entered the closet and found a loaded firearm in a "fanny pack" on the top shelf. At this point, another police officer read Martin his Miranda rights and formally placed him under arrest. He was subsequently indicted for assault by means of a dangerous weapon (firearm), unlawful possession of a firearm while being an armed career criminal, and unlawful possession of ammunition.[1]

Martin filed a motion to suppress the firearm and ammunition on the basis that they were discovered during a warrantless search of his apartment conducted in violation of his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. The Commonwealth conceded that Martin's unwarned statement to the detective could not be introduced against him at trial because he had been in custody at the time it was made. It argued, however, that the failure to administer Miranda warnings did not mean that Martin could not validly consent to the search of his closet, and the firearm recovered after his voluntary statement should therefore be admissible in evidence against him.

---

[1]Two weeks earlier, as part of a separate investigation, the Boston police had received information from the same complainant about drug dealing in Martin's apartment. The complainant had observed Martin cutting up large quantities of cocaine and supplying the drug to the complainant's girl friend. Police gathered additional information on Martin and conducted surveillance of his activities. On the day of Martin's arrest, the officers investigating the drug offenses were told about the arrest. They immediately applied for and obtained a warrant to search Martin's apartment for narcotics. The application included information about the gun found in Martin's apartment. The warrant was executed during the evening of the same day. During the search, the police recovered "crack" cocaine and drug paraphernalia. Martin was thereafter indicted for possession of a Class B controlled substance (cocaine) with intent to distribute and possession of cocaine with intent to distribute within 1,000 feet of a school. Martin's motion to suppress the evidence found in the search for narcotics was denied and is not the subject of this appeal.

The judge allowed Martin's motion. In her ruling, she found that the police were justified in entering Martin's apartment, in arresting him as the assailant, and in conducting a protective sweep. She also found that Martin's unwarned statements had not been "coerc[ed]." However, relying on *Wong Sun* v. *United States*, 371 U.S. 471, 487-488 (1963), the judge concluded that the firearm and ammunition should be suppressed as the "fruit" of unlawful questioning by the detective.

The Commonwealth sought reconsideration of the judge's order, contending that she had relied on Fifth Amendment grounds not advanced by the defendant and because she had failed to follow the Supreme Court's recent *Patane* decision.[2] The judge allowed Martin to amend his motion to include claims based on the Fifth Amendment and art. 12, and directed the parties to brief the issue whether Massachusetts law and art. 12 provided greater protection to Martin, in these circumstances, than the Fifth Amendment. After further argument, she reaffirmed her ruling, agreeing with the Commonwealth that under *Patane* the introduction of the firearm and ammunition in evidence would not violate the Fifth Amendment, but concluding that the greater protections provided by art. 12 required their suppression. The judge further opined that "the fruit of the poisonous tree doctrine has never turned on what *kind* of evidence was seized as a result of a constitutional violation" (physical or testimonial), or which constitutional right had been violated, but rather "whether there is a close enough connection between the unconstitutional conduct and the evidence obtained as a result of that conduct, such that the evidence must be excluded from trial." The Commonwealth filed a petition for interlocutory review, and a single justice allowed the request and ordered that the appeal be entered in this court.

2. *Discussion.* The core protection afforded by the self-incrimination clause of the Fifth Amendment is a prohibition on

[2]The Commonwealth did not contend that the public safety exception to the Miranda requirement applied in this case, see *New York* v. *Quarles*, 467 U.S. 649 (1984); *Commonwealth* v. *Alan A., a juvenile*, 47 Mass. App. Ct. 271 (1999), and the facts would probably not have supported such a claim. Martin was in custody; his apartment was swept and secured by the police; and there was no basis to conclude that the firearm was anywhere other than in the apartment, for which the police intended promptly to secure a search warrant.

compelling a criminal defendant to be a "witness against himself."[3] Similarly, one of the core protections of art. 12 is a prohibition on compelling any person to "furnish evidence against himself."[4] "[I]n *Miranda*, the Court concluded that the possibility of coercion inherent in custodial interrogations unacceptably raises the risk that a suspect's privilege against self-incrimination might be violated." *Patane, supra* at 639. Consequently, it announced a constitutionally based rule, prophylactic in nature, requiring that warnings be given to suspects in custody as a prerequisite to the admissibility of any statements they might make as the result of their interrogation. *Dickerson* v. *United States*, 530 U.S. 428, 435 (2000). This rule "creates a presumption of coercion, in the absence of [those] warnings, that is generally irrebuttable for purposes of the prosecution's case in chief." *Patane, supra* at 639. See *Commonwealth* v. *Smith*, 412 Mass. 823, 836 (1992), quoting *State* v. *Lavaris*, 99 Wash. 2d 851, 857 (1983) ("any confession obtained in the absence of proper *Miranda* warnings is by definition 'coerced' "). As we have noted, the rule protects both Fifth Amendment rights and rights guaranteed under art. 12.

We have fully recognized the important protections provided by the Miranda rule since its pronouncement in 1966, and have held that the failure to administer the warnings it requires "is itself an improper police tactic" that is strongly to be discouraged. *Commonwealth* v. *Smith, supra* at 836. See *Commonwealth* v. *Haas*, 373 Mass. 545, 554 (1977) (characterizing unwarned custodial interrogation as "illegal"). In furtherance of *Miranda*'s prophylactic purpose, Massachusetts appellate courts have consistently excluded the fruits (both testimonial and physical) of custodial interrogations undertaken without administering those warnings from use at trial, see *Commonwealth* v. *DiMarzio*, 436 Mass. 1012, 1013 (2002); *Commonwealth* v. *Haas, supra*; *Commonwealth* v. *Barros*, 56 Mass. App. Ct. 675, 678-679 (2002). To do otherwise would counte-

---

[3]"No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." Fifth Amendment to the United States Constitution.

[4]"No subject shall . . . be compelled to accuse, or furnish evidence against himself." Art. 12 of the Declaration of Rights of the Massachusetts Constitution.

nance precisely the kind of police interrogation we have intended to deter. *Commonwealth* v. *Smith, supra.*

In *Patane, supra* at 634-637, on facts strikingly similar to those present here, the Supreme Court held that the failure to give Miranda warnings is not itself a violation of the Constitution, and that while the "presumption of coercion" continues to apply to an unwarned statement, physical evidence discovered as the result of such a statement is admissible so long as the unwarned statement was not, in fact, coerced. In so holding, the Court concluded that the self-incrimination clause "limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character," *id.* at 637, quoting *United States* v. *Hubbell*, 530 U.S. 27, 34 (2000), that the right against self-incrimination contained therein is adequately protected by suppressing the unwarned statement alone, and that the self-incrimination clause "cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary [even though unwarned] statements." *Patane, supra* at 637. Leaving the critique of the majority's reasoning to others, see, e.g., Kamisar, Postscript: Another Look at Patane and Seibert, The 2004 Miranda "Poisoned Fruit" Cases, 2 Ohio St. J. Crim. L. 97 (2004); The Supreme Court, 2003 Term, 118 Harv. L. Rev. 296 (2004), the practical consequences of its ruling are notable and troubling. As Justice Souter pointed out in his dissent, "[i]n closing their eyes to the consequences of giving an evidentiary advantage to those who ignore *Miranda*, the plurality adds an important inducement for interrogators to ignore the rule . . . . There is no way to read this case except as an unjustifiable invitation to law enforcement officers to flout *Miranda* when there may be physical evidence to be gained." *Patane, supra* at 646-647 (Souter, J., dissenting). To apply the *Patane* analysis to the broader rights embodied in art. 12 would have a corrosive effect on them, undermine the respect we have accorded them, and demean their importance to a system of justice chosen by the citizens of Massachusetts in 1780.

Article 12 provides that "[n]o subject shall . . . be compelled to accuse or furnish evidence against himself." Its text, its history, and our prior interpretations conclusively establish that it

provides greater rights than those enumerated in the Federal Constitution. *Commonwealth* v. *Mavredakis*, 430 Mass. 848, 858-859 (2000). The adoption of these rights in the Constitution of the Commonwealth "preceded and [are] independent of the Constitution of the United States." *Id.* at 859, quoting *Commonwealth* v. *Upton*, 394 Mass. 363, 372 (1985). Even in its narrowest construction, the right not to be compelled to "furnish evidence" against oneself, found in art. 12, "extends to all investigations of an inquisitorial nature, instituted for the purpose of discovering crime, or the perpetrators of crime, by putting suspected parties upon their examination in respect thereto, in any manner . . . . But it is not even thus limited." *Emery's Case*, 107 Mass. 172, 181 (1871). See *Commonwealth* v. *Burgess*, 426 Mass. 206, 209 (1997) ("Under the Fifth Amendment only compelled communication that is *testimonial* and potentially incriminating is precluded by the privilege against self-incrimination . . . and under art. 12 compelled communication that furnishes evidence is precluded").

We have often held that the art. 12 protection against self-incrimination applies only to the compelled production of communicative or testimonial evidence and not in circumstances where a witness is the source of real or physical evidence, see *id.* at 218, and cases cited. Such distinction, however, has no relevance here. Martin was questioned as to the whereabouts of a firearm that the police intended to use against him as evidence in a criminal investigation. He was not required to pose for identification purposes, *Commonwealth* v. *Burke*, 339 Mass. 521, 534-535 (1959), rev'd on other grounds, *Commonwealth* v. *Beldotti*, 409 Mass. 553 (1991); to subject himself to a field sobriety test, *Commonwealth* v. *Brennan*, 386 Mass. 722, 780 (1982); or to provide a handwriting exemplar, *Commonwealth* v. *Buckley*, 410 Mass. 209, 214-216 (1991). He was asked to *communicate* incriminating information to the police. Article 12 rights are directly implicated and would be imperiled if the product of such a communication — obtained in the presumptively coercive atmosphere of police custody, unmitigated by Miranda warnings — was routinely admissible in evidence. Suppression of the statement alone is an inadequate remedy. As the Supreme Court of New Hampshire has noted:

"Prosecutors and police officers understand that the consequence of failing to abide by *Miranda* is the suppression of the defendant's statements. *To allow the police the freedom to disregard the requirements of Miranda and thereby risk losing only the direct product of such action, but not the evidence derived from it, would not only not deter future Miranda violations but might well tend to encourage them.* An officer more concerned with the physical fruits of an unlawfully obtained confession than with the confession itself might reasonably decide that the benefits of securing admissible derivative evidence outweighed the loss of the statements." (Emphasis added.)

*State* v. *Gravel*, 135 N.H. 172, 183 (1991).

The Miranda rule was promulgated to protect Federal constitutional rights. It has not been adopted as a means of protecting State constitutional rights. Insofar as it adequately protects those rights, a separate rule is not required. To the extent that its application proves inadequate to that task, we have "established certain State law principles as adjuncts to the Miranda rule." *Commonwealth* v. *Ghee*, 414 Mass. 313, 318 n.5 (1993). When, in the past, we have been confronted by shrinking protections afforded to the Federal right against self-incrimination, implicating the protections afforded art. 12 rights, we have "provided additional protections under the common law, protections that go beyond what the Supreme Court would require in similar circumstances as a matter of constitutional imperative." *Commonwealth* v. *Snyder*, 413 Mass. 521, 531 (1992).

In *Commonwealth* v. *Smith*, 412 Mass. 823 (1992), we rejected the Supreme Court's decision in *Oregon* v. *Elstad*, 470 U.S. 298 (1985), as being inadequate to protect art. 12 rights. That case similarly involved an incriminating statement obtained from a suspect in custody before he was advised of his Miranda rights. *Commonwealth* v. *Smith, supra* at 827-828. The Supreme Court concluded that such a statement (although presumptively coerced) did not taint, and would not ordinarily preclude the admission of, a subsequent incriminating statement made after Miranda warnings were given, so long as the first statement was "voluntary" (not actually coerced). *Oregon* v. *Elstad, supra* at

314. This decision overturned a body of precedent, adopted in Massachusetts and elsewhere, that "presumed" the subsequently given statement to be tainted by the earlier improperly obtained "unwarned" statement, and placed a significant burden on the Commonwealth to prove otherwise. See generally *Commonwealth* v. *Meehan*, 377 Mass. 552, 571 (1979), cert. dismissed, 445 U.S. 39 (1980); *Commonwealth* v. *Haas*, 373 Mass. 545, 554 (1977). Contrast *Commonwealth* v. *Watkins*, 375 Mass. 472, 482 (1978).

In concluding that Federal law was no longer adequate to protect rights guaranteed by art. 12, we announced our intention to continue the previously prevailing rule, adopting it as a common-law rule of evidence. In choosing this course, the court noted the important interests served by the pre-*Elstad*, bright-line Miranda rule including avoiding fact-bound inquiries into the voluntariness of confessions given prior to Miranda warnings, and deterring "law enforcement officials from circumventing the Miranda requirements by using the warnings strategically," thereby eroding the rule's important function in protecting these rights.[5] *Commonwealth* v. *Smith*, *supra* at 829.

In *Commonwealth* v. *Mavredakis*, 430 Mass. 848, 849, 860 (2000), we again elected such a course in holding that, in order for a waiver of Miranda rights to be valid, art. 12 requires the police to inform a suspect in custody of an attorney's efforts to contact him for the purpose of rendering legal assistance. This was necessary, we said, to "actualize abstract rights listed in *Miranda* v. *Arizona*, 384 U.S. 436 (1966)." *Id.* at 860. The decision was rendered in the wake of *Moran* v. *Burbine*, 475 U.S. 412 (1986), in which the Supreme Court, ruling to the contrary, held that Fifth Amendment rights were not implicated by failing to provide this information to a suspect undergoing interrogation, because such efforts, being entirely unknown to the suspect, "have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Id.* at 422.

---

[5]The Court of Appeals of New York in *People* v. *Bethea*, 67 N.Y. 2d 364 (1986), had also rejected the *Elstad* rule as inadequate to protect State constitutional rights, insofar as the rule "would have little deterrent effect if the police know that they can as part of a continuous chain of events question a suspect in custody without warning, provided only they thereafter question him or her again after warnings have been given." *Id.* at 366.

Reiterating our view that the rights listed in the *Miranda* decision were "substantively meaningful" and necessary to protect the broader rights afforded by art. 12, we concluded that the Federal rule was no longer adequate. *Commonwealth* v. *Mavredakis, supra* at 858-861.[6]

The reasoning of *Commonwealth* v. *Mavredakis, supra,* and *Commonwealth* v. *Smith, supra,* applies equally here, and we choose again to follow what we believe to be the "wiser course," *id.* at 836, a bright-line rule that ensures rather than undermines the protection of the important rights and interests embodied in art. 12.

3. *Conclusion.* The judge's allowance of the motion to suppress is affirmed.[7]

*So ordered.*

---

[6]Compare *Commonwealth* v. *A Juvenile,* 402 Mass. 275 (1988) (as matter of State common law, in order to establish Miranda rights waiver by juvenile, juvenile must have had opportunity for meaningful consultation with interested adult, even though such requirement not mandated by Federal Constitution), with *Fare* v. *Michael C.,* 442 U.S. 707, 725-726 (1979) (for Federal constitutional purposes, determination whether juvenile or adult suspect has voluntarily waived Miranda is based on totality of circumstances); and compare *Opinion of the Justices,* 413 Mass. 1201 (1992) (evidence of refusal to take breathalyzer test barred by art. 12), with *South Dakota* v. *Neville,* 459 U.S. 553, 564 (1983) (no Fifth Amendment bar to introduction of refusal).

[7]The Commonwealth did not argue below that the "inevitable discovery" exception to the exclusionary rule applied in this case. See *Commonwealth* v. *Benoit,* 382 Mass. 210, 217 (1981). It makes the argument for the first time in the concluding paragraphs of its brief, as an alternative basis for reversing the judge's decision. In these circumstances, we do not consider the argument.