Agnes, Peter W., J.
The defendant, Chu Perez, is charged by indictment with distribution of heroin, distribution of cocaine and school zone violations in connection with events that occurred at 7 Liberty Square, Lynn, Massachusetts in September 2003. The defendant has filed a pretrial motion to suppress quantities of heroin and cocaine seized from an automobile he drove to that location. An evidentiary hearing was conducted on April 20, 2005. Following the hearing, the court made findings of fact on the record and, following oral argument by counsel, took under advisement questions of law relating to the validity of a warrantless search of the automobile in which the drugs were found.
SUMMARY OF THE FINDINGS OF FACT
The court credited the testimony of the two witnesses for the Commonwealth, Lieutenant Alan Zani of the Massachusetts State Police and Lieutenant Daniel Fee of the Lynn Police. In summary, the facts are as follows.
On September 25-26, 2003, Lieutenant Zani and Lieutenant Fee, experienced police investigators who held the rank of Sergeant at the time of the events in question and who were assigned to a regional narcotics task force, were conducting a standard follow-up investigation of a non-fatal drug overdose that had occurred at Apartment number 442, 7 Liberty Square in Lynn, Massachusetts. This is a multi-unit apart *525 ment complex with a red brick facade. A resident of that apartment, Stephen LeClair (“LeClair”), informed the police that the supplier of drugs was a person known as “Nando.” LeClair described Nando as a Hispanic male with a slim to medium build. LeClair told the police that he could contact Nando by telephone and could arrange for the delivery of drugs. Arrangements were made with LeClair for a controlled delivery of drugs to the 7 Liberty Square apartment the following day.
On September 26, 2003, six task force officers, including Lieutenants Zani and Fee, were stationed in various positions in and around the Liberty Square Apartment complex. Lieutenant Zani was posted outside the apartment complex. Lieutenant Fee was inside the apartment. Telephone calls were made by LeClair to Nando’s pager. A short time later, the telephone rang inside apartment number 442. LeClair indicated to Lieutenant Fee by a nod of his head that it was Nando. A second call was placed to Nando resulting in a return call to apartment number 442. According to LeClair, Nando said he would be coming right along with the drugs.
At approximately 12:30 p.m., Lieutenant Zani saw a blue Chevrolet Lumina sedan drive into the parking lot associated with 7 Liberty Square. The defendant was the driver and sole occupant. He was described by the police as a slim, Hispanic male, dressed in a white tee-shirt, blue jeans, and blue cap. The defendant exited from the vehicle and entered 7 Liberty Square through a rear door.
The plan devised by Lieutenant Fee and agreed to by LeClair called for LeClair to identify Nando through the apartment door’s peep hole. LeClair did so, but then unexpectedly he opened the door. The defendant turned and ran from the apartment, leap-frogging down the stairs. He was pursued by State Police Trooper Bruce who identified himself as a police officer. Nando did not stop running. Nando made his way to the parking lot through a different rear door from the one he had entered. The police observed him put his hand to his pocket and then to his mouth as he ran.
Lieutenant Zani made observations of the defendant’s flight. The defendant ran past the Chevrolet Lumina and outside the parking lot. He was captured by Lieutenant Zani several hundred feet away. He was arrested, pat frisked and removed from the scene. The police seized a set of car keys from the defendant’s person following his arrest. The police entered the Chevy Lumina that the defendant had been seen operating earlier and the keys were found to fit the ignition. Acting without a warrant, the police conducted a thorough search of the vehicle including the passenger compartment and trunk. Lieutenant Fee noticed that the steering wheel cover appeared to be loose, pried it open and found several plastic bags stuffed inside it. These bags in turn contained numerous plastic “twists” containing in one case a white and in another case a brown powdeiy substance which proved to be heroin and cocaine. The police also found a plastic twist of heroin along the defendant’s path of flight from apartment 442. Additional evidence was seized from the defendant’s person during the booking process at the police station but this information was not conveyed to the police at the scene until after the search of the Chevrolet Lumina. The police also learned that the defendant was not the registered owner of the Chevy Lumina vehicle.
RULINGS OF LAW
1. Whether There Was Probable Cause to Search the Vehicle
The defendant maintains that the police lacked probable cause to search the Chevrolet Lumina, and, in any case, had no right to proceed to conduct a search without a warrant. Probable cause to search the vehicle existed if police officers had enough knowledge “to warrant a person of reasonable caution in believing” that it contained narcotic drugs or evidence of drug dealing. Commonwealth v. Motto, 424 Mass. 117, 120 (1997), and cases cited. See Commonwealth v. Emuakpor, 57 Mass.App.Ct. 192,200 (2003) (“probable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense”), quoting Commonwealth v. Moscat, 49 Mass.App.Ct. 622, 624 (2000), quoting from Commonwealth v. Storey, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). “In dealing with probable cause ... as the veiy name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” Id. (citation omitted).[1] Whether the requisite factual nexus exists between criminal activity, the items to be seized, and the placed to be searched depends upon the nature of the criminal activity that is involved. See Commonwealth v. Cinelli, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983) (“the nexus between the items to be seized and the place to be searched need not be based on direct observation . . . [but]. .. [t]he nexus may be found in ‘the type of crime, the nature of the missing items, the extent of the suspect’s opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [evidence of the crime]’ ”).
The mere fact that a person is guilty of a crime such as possession or distribution of drugs does not mean that there is probable cause to believe that drugs will be found in the individual’s automobile or home. In the present case, the police could reasonably infer that the defendant used the Chevrolet Lumina to get to 7 Liberty Square from whatever location the defendant was at when he was contacted by LeClair. The police *526 also could reasonably infer that the defendant had used an automobile for such a purpose in the past, and perhaps even that he had done so on many occasions. The police finally could infer that the defendant was in the business of transporting drugs either as a courier or as an actual drug dealer.
The question thus is whether the police had reasonable grounds to believe that drugs or evidence of criminal activity involving the sale and delivery of drugs would be located in the Chevy Lumina vehicle. Certainly, this case is distinguishable from those in which there is some direct evidence of the presence of drugs in the vehicle. Contrast, Commonwealth v. Fabian, Worcester Superior Court No. 2004-0260 (Dec. 24, 2004) (18 Mass. L. Rptr. 597) (the detection of a strong odor of unbumt marijuana provides probable cause for the search of a motor vehicle); Commonwealth v. Shea, 1993 WL 818826 (Mass. Superior Court 1993) (the smell of marijuana, the observation of a marijuana roach and marijuana rolling papers in the car, and the discovery of a packet of marijuana on the person of the front seat passenger of the car established probable cause to search the vehicle).
For the same reason, it might be argued that the facts in this case are weaker than the facts in Commonwealth v. Miller, 366 Mass. 387 (1975), in which a bare majority of the Justices of the Supreme Judicial Court held that the presence of a remnant of a marijuana cigarette in a vehicle’s ashtray supplied probable cause for the search of the vehicle. And, the argument continues that the facts here are closer to those in Commonwealth v. White, 374 Mass. 132 (1977), affirmed, 439 U.S. 280 (1978). In White, the court rejected the Commonwealth’s argument that a small quantiiy of drugs found on the defendant’s person following his arrest for operating under the influence of alcohol supplied probable cause for a search of the trunk of the vehicle. “Neither the possession of the small quantity of marihuana nor the fact that the defendant was thought to be operating under the influence of alcohol sufficiently establishes a nexus between the criminal activity sought to be investigated and the trunk of the vehicle. There is no necessary correlation between the untainted allegations in the affidavit and the presence of controlled substances in the defendant’s car. At best, issuance of a warrant on such information alone would be a ’’hunch" on the part of the issuing magistrate ..." White, 374 Mass, at 120.
However, this case is distinguishable from Commonwealth v. White, supra, and stronger than Commonwealth v. Miller, supra, in that the police had first-hand knowledge that drugs were located in the car at one time because the defendant used the vehicle to deliver drugs to 7 Liberty Square, and that this particular defendant had made deliveries of drugs in the past. Evidence that a drug dealer or drug courier uses a motor vehicle to deliver drugs and has done so in the past supports an inference that drugs or some evidence of drugs (drug paraphernalia, storage materials, or customer lists) would be located in the vehicle. See Commonwealth v. Crespo, 59 Mass.App.Ct. 926, 927 (2003) (“(t)he discoveiy of a substantial amount of white powder that appeared to be cocaine in plain view on the ground near the SUV provided probable cause to believe there was other contraband in the car as well as in the debris surrounding the car”). See also United States v. Brookins, 345 F.3d 231, 236 (4th Cir. 2003); Commonwealth v. Borden, 403 Mass. 1008 (1988); Commonwealth v. Fernandez, 57 Mass.App.Ct. 562 (2003).
In any case, even if independent probable cause to search the vehicle is lacking, there are alternative grounds that justify the warrantless search by the police.
2. Seizure of Mere Evidence of a Crime
At least since the decision by the Supreme Judicial Court in Commonwealth v. Murray, 359 Mass. 546, 547 (1971), the police have authority to seize items of only evidential value provided that there is probable cause to believe that the evidence will aid in the apprehension or prosecution of a person for a crime. Accord, In the Matter of Lavigne, 418 Mass. 831, 835-36 (1994). In this case, the Commonwealth alleges that the defendant responded to a telephone page and delivered illegal drugs to 7 Liberty Square. The Commonwealth’s case includes evidence that the defendant drove to the location in a Chevrolet Lumina vehicle. The vehicle itself is evidence that would corroborate the testimony of Lieutenant Zani and others about the manner in which the crime was committed. Thus, the police were warranted in seizing it since it was in plain view in an area that was open to the public. See “Under [the plain viewl doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.” Commonwealth v. Santana, 420 Mass. 205, 211 (1995) (citations omitted). See also Commonwealth v. Street, 56 Mass.App.Ct. 301, 304 (2002) (“[t]he police had probable cause to believe that the automobile seized was involved in the incident and therefore was likely to contain or otherwise provide evidence of the crimes”).
Under the rule that police conduct which constitutes a search or seizure will be upheld as justified if there is any basis in the law to support it even if the officer involved does not articulate the correct basis for his or her action, this becomes an alternative ground for denying the defendant’s motion.
3. Search Incident to an Arrest
When a person who is the driver or occupant of an automobile is arrested, the police may conduct a contemporaneous search of the passenger compartment of the vehicle and examine the contents of any *527 closed containers. See Commonwealth v. Bongarzone, 390 Mass. 326, 351 (1983); Commonwealth v. Johnson, 49 Mass.App.Ct. 273,275-76 (2000). As originally conceived, the exception to the warrant requirement known as a search incident to arrest was justified by the need to protect the police from the defendant’s use of a weapon or the loss of evidence and thus was limited in scope to the person of the defendant and the area within the defendant’s reach. Chimel v. California, 395 U.S. 752, 763 (1969). Over the years since Chimel, both the United States Supreme Court, see New York v. Belton, 453 U.S. 454 (1981), and the Supreme Judicial Court, see Commonwealth v. Madera, 402 Mass. 156, 160 (1988), have redefined the doctrine in fundamental ways. For example, it is no longer necessity to demonstrate that at the time of the search the defendant could actually reach into the area searched. See, e.g., Commonwealth v. Netto, 438 Mass. 686, 695-96 (2003) (upholding search of defendants’ motel room as incident to their arrest on murder charges even though search occurred after defendants had been handcuffed and removed from the room; “it is inappropriate to suppress evidence based on hindsight measurements of precisely how far each defendant could have reached at the moment the item in question was seized”); Commonwealth v. Elizondo, 428 Mass. 322, 324-25 (1998) (bathroom from which defendant appears to have retrieved cocaine moments earlier was searched and a closed container within it was opened and searched after the defendant was arrested, handcuffed and secured within four or five feet of the bathroom door; “(t]here is no determinative rule limiting the physical scope of a search incident to arrest to a particular number of feet”); Commonwealth v. Lelos, 61 Mass.App.Ct. 626 (2004) (upholding the search of the area underneath the passenger’s side seat of a motor vehicle following the arrest of the driver and passenger and the removal of the driver from the scene).
Nonetheless, the doctrine of search incident to arrest is still anchored to its original roots in other ways. First, there must be a lawful arrest. See Commonwealth v. Santiago, 410 Mass. 737, 743 (1991). Second, the search must be made contemporaneous with the defendant’s arrest. See Commonwealth v. Alvarado, 420 Mass. 542, 554 (1995); Commonwealth v. Santiago, 410 Mass. 737, 743 (1991). Third, the purpose of the search is limited to “fruits, instrumen-talities, contraband and other evidence of the crime for which the arrest has been made . . . and removing any weapons . . .” G.L.c. 276, §1. The statute, G.L.c. 276, §1, however, does not affect the admissibility of evidence of the crime for which the arrest is made or weapons that are seized incident to arrest. Commonwealth v. Madera, supra, 402 Mass, at 159.
It is clear that in a case such as this, if the defendant had been arrested while he was in his motor vehicle or just outside his motor vehicle, the police would have been authorized to search the entire passenger compartment for evidence of drugs or weapons. Commonwealth v. Bongarzone, supra. This is precisely what took place in Commonwealth v. Borden, 403 Mass. 1008 (1988) (rescript), a case involving somewhat similar facts. Recent developments in the law suggest that the doctrine of search incident to arrest has evolved to the point where contemporaneity with the arrest and a nexus between the items seized and the crime for which the arrest is made are regarded as most significant and immediate proximity between the location of the arrest and the place searched is less critical. For example, in Thornton v. United States, 541 U.S._, 127 S.Ct. 2127 (2004), the court relied on the evolving nature of the search incident to arrest doctrine to justify the search of the passenger compartment of the defendant’s vehicle even though the officer’s only contact with the person was outside the vehicle. Why should the doctrine of search incident to arrest turn on whether a fleeing defendant, as in this case, is apprehended within feet of his motor vehicle or, as in this case, not until he runs several hundred feet beyond his motor vehicle when it is no longer necessary to demonstrate that the defendant was actually capable of reaching into the vehicle to obtain a weapon or to destroy evidence?
ORDER
For the above reasons, the defendant’s motion to suppress the evidence seized from the Chevrolet Lu-mina vehicle is DENIED.

 Contrary to the defendant’s argument, the police were not required to demonstrate that in addition to probable cause, there were exigent circumstances which warranted a search without a warrant. See Commonwealth v. Motta, 424 Mass. 117, 124 (1997); Commonwealth v. Nicholson, 58 Mass.App.Ct. 601, 606-07 (2003).