COMMONWEALTH *vs.* ALAN A., a juvenile.

No. 97-P-579.

Plymouth. October 19, 1998. - July 12, 1999.

Present: BROWN, GILLERMAN, & SMITH, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional rights by juvenile. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement. *Evidence,* Credibility of witness.

Evidence at a hearing on a motion to suppress a statement made by a juvenile at the time he was arrested, in response to a police officer's question, "Where's the gun?", supported the judge's finding that the police reasonably feared that they and others were in danger unless the gun was found: the "public safety" exception to the Miranda rule excused the officers' failure to give the juvenile an opportunity to consult with his parents. or other interested adult before he was questioned. [274-275]

At the trial of a delinquency complaint, no substantial risk of a miscarriage of justice arose from the admission in evidence of a statement of the juvenile to police at the time of his arrest, where the issue of the voluntariness of the statement, not raised by the juvenile at trial, was the subject of correct instructions to the jury by the trial judge. [275]

In a criminal case, the judge correctly ruled that statements made by a juvenile to police after his arrest and after he was advised of his rights were voluntary and not the product of any improper interrogation by police. [275-277]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on September 16, 1996.

Pretrial motions to suppress evidence were heard by *Robert F. Murray,* J., and the case was tried before him.

*Matthew V. Soares* for the juvenile.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

SMITH, J. As a result of an incident occurring in mid-September, 1996, the juvenile was charged with (1) breaking and entering in the nighttime with intent to commit a felony, (2) larceny of a firearm, and (3) carrying a firearm without a license.

Prior to trial, the juvenile filed two motions in limine to exclude certain statements which he allegedly made to the police.[1] The judge properly considered the motions to be suppression motions. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 25-26 (1998). He held an evidentiary hearing and denied both motions.

After a bench trial, the juvenile was found not delinquent on the breaking and entering charge but delinquent on the two firearm charges. He exercised his right to a de novo jury trial and, at the conclusion of the trial, a jury adjudicated him to be delinquent on both outstanding charges. The juvenile was committed to the Department of Youth Services. The juvenile appealed.

The juvenile's principal claim on appeal is that his statements should have been suppressed because, after he received his Miranda warnings (*Miranda* v. *Arizona*, 384 U.S. 436 [1966]), he was not given the opportunity to consult with his parents or an interested adult.[2]

1. *The juvenile's first statement.* We summarize the facts found by the judge in regard to the statement that the juvenile made at the time of his arrest. On September 12, 1996, the juvenile's father reported to the West Bridgewater police that the juvenile, his son, had run away from home taking the father's handgun. The father told the police that Colleen S. was a friend of his son and he believed his son to be in her company. The police began a surveillance of Colleen S.'s home. Colleen S. was located by the police and she told them that she had seen the juvenile earlier. He had a gun which he showed to her. The juvenile allowed her to hold it after having unloaded it but then reloaded the gun after she gave it back to him. Colleen S. also stated that the juvenile still possessed the weapon and kept it on his person.

Later in the day, the police received a message that the

---

[1]One motion concerned a statement that the juvenile made at the time of his arrest, while the other motion involved statements made by the juvenile while he aided the officers who were looking for the gun.

[2]It has been held that juveniles over fourteen years of age, in addition to receiving Miranda warnings, "should ordinarily [have] an opportunity for a meaningful consultation with a parent, interested adult, or attorney to ensure that the waiver [of the juvenile's constitutional rights] is knowing and intelligent." *Commonwealth* v. *A Juvenile*, 402 Mass. 275, 279 (1988).

The juvenile in this matter was fifteen years old at the time he gave his statements.

juvenile was presently inside Colleen S.'s home. They immediately went to that address. As they approached the house they saw Colleen S. and another person looking out of the window. There was a note taped to the door which said "gone shopping."

One of the officers knocked on the door several times. No one responded. One of the officers then went to a window and spoke loudly to the persons inside the house about the seriousness of the situation. Within a few minutes Colleen S. opened the door and told the officers that the juvenile was in the living room. The officers entered the kitchen. They could not see into the living room. Both officers drew their weapons and ordered the juvenile into the kitchen. When he entered the room, the officers noticed that he did not have a gun in his hand.

He was ordered to lie face down on the floor and was handcuffed. One of the officers advised the juvenile of his Miranda rights and asked whether the juvenile understood them. The juvenile stated that he did understand them. The officer asked the juvenile, "Where's the gun?" The juvenile replied, "I don't have it anymore."[3] A search of the home for the gun was fruitless.

At the hearing and on appeal, the Commonwealth argued that the juvenile was not entitled to be given an opportunity to consult with his parents or interested adult because of the "public safety" exception to the Miranda rule, citing *New York* v. *Quarles*, 467 U.S. 649, 656-657 (1984).[4]

Based on the evidence, the judge found that at the time the

---

[3]This statement was the subject of one of the motions.

[4]The facts in *Quarles* are as follows. Two police officers received information from a woman who stated that she had just been raped. She described her assailant, and told them that the man had just entered a supermarket and was carrying a gun. One of the officers entered the store, located the assailant, and pursued him with a drawn gun. The officer lost sight of the man for several seconds. However, he again saw the assailant, and ordered him to stop and put his hands over his head. The officer frisked him and discovered an empty holster. The officer handcuffed the assailant and asked him where the gun was. The man nodded his head toward some empty cartons and stated, "the gun is over there." *New York* v. *Quarles*, 467 U.S. at 651-652. The trial court suppressed the assailant's statement as did a divided New York Court of Appeals in *People* v. *Quarles*, 58 N.Y.2d 664 (1982).

In reversing the lower courts, the Supreme Court carved out a "public safety" exception to the requirement that a suspect who is in custody be advised of his rights before he is interrogated. The Court ruled that in those narrow circumstances where "the need for answers to questions in a situation

officer questioned the juvenile concerning the location of the gun, the officer did not know whether the firearm was on the juvenile's person or whether another person could gain access to it. The judge also found that the police reasonably feared that if the firearm were not secured immediately, the juvenile would harm himself or others who were present. Moreover, the judge found that the question was limited to the discovery of the gun, and was not designed to elicit testimonial evidence from the juvenile. See *New York* v. *Quarles*, 467 U.S. at 658-659. The judge ruled that the "public safety" exception was applicable and therefore, by implication, the juvenile was not even entitled to be given his Miranda warnings or an opportunity to consult with an "interested adult" before he waived his constitutional rights. On appeal, the juvenile raises two issues. The first is that the "public safety" exception did not apply because the evidence did not support the judge's findings that the police reasonably feared that they and others were in danger unless the gun was found.[5] The juvenile also claims that his statement was involuntary.

The juvenile's argument is based on his own view of the credibility of the police witnesses. However, "the determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw the witnesses, and not [the appellate] court." *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). We will not substitute our judgment for that of the finder of fact. *Commonwealth* v. *Mello*, 420 Mass. 375, 384 (1995). Further, the judge's findings were clearly supported by the record.

There was testimony that the police knew the juvenile had been in recent possession of a loaded gun. At the time the officer asked the juvenile the challenged question, the police had not searched the house and, therefore, did not know if the gun was still on the premises or if anyone else, other than Col-

posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination," it *is not necessary to advise a suspect of his rights. New York* v. *Quarles*, 467 U.S. at 657. The limited circumstances generally involve a weapon that has been left in a public area where the officers believe that it poses a danger to the public if not discovered.

[5]The juvenile does not challenge the application of *Quarles* to cases involving juveniles. Other jurisdictions have applied *Quarles* in the juvenile context. See *In re B.R.*, 133 Ill. App. 3d 946 (1985); *In re J.D.F.*, 553 N.W.2d 585, 588 (Iowa 1996); *In re A.S.*, 227 N.J. Super. 541 (1988).

leen S., was in the house. Further, the judge found that the question was limited in scope and designed to insure that any danger to the police or the public would not result from the concealment of the gun. The question was not asked to obtain testimonial evidence against the juvenile. *New York* v. *Quarles, supra* at 658-659.

We recognize that the *Quarles* decision concerned the location of a gun in a public area while the present matter involves the possible location of a gun in a private residence. However, although the hiding of a gun in a supermarket or other public area may create a higher potential for danger to a member of the public, the presence of a loaded gun in or about a private residence also may present a substantial threat to a number of persons including an arresting officer. See *In re John C.*, 130 A.D.2d 246, 252 (N.Y. 1987). Further, at the time the officer asked the question, he did not know if the gun was still in the house or had been disposed of by the juvenile in a public area.

The juvenile claims for the first time that his statement should have been suppressed because it was not made voluntarily. It is well established that "the question of voluntariness must be raised by a defendant and he must offer some proof to support his claim." *Commonwealth* v. *Smith*, 426 Mass. 76, 82 (1997). However, the juvenile's pretrial motion does not claim that his statement to the police at the time of his arrest was made involuntarily. See Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979) ("Grounds not stated which reasonably could have been known at the time a [pretrial] motion is filed shall be deemed to have been waived . . . ."). Therefore the issue is waived.

We also note that there was no substantial risk of a miscarriage of justice because of the admission of the juvenile's statement. The full details of how the statement was obtained were presented to the jury. Further, in accordance with our humane practice, the judge correctly instructed the jury to disregard the juvenile's statement unless they concluded that the Commonwealth had proved beyond a reasonable doubt that the juvenile's statement was voluntary. See *Commonwealth* v. *Smith, supra* at 83.

2. *The juvenile's second statement.* We summarize the judge's findings concerning the juvenile's second statement. The juvenile was arrested and brought to the West Bridgewater police station. His parents were called by the police and asked to come to the police station. They arrived about ninety minutes

later. During that period, the juvenile was not questioned by the police.

After their arrival, the parents and the juvenile were brought to a room where an officer advised them of the Miranda rights. The officer then left them alone so that they could talk in private. After fifteen or twenty minutes, the father emerged from the room and told the officer that his pager had just activated which was most likely his lawyer calling him. The father then asked for more time to talk with his son. The officer agreed and left the juvenile and his parents alone in a room with a telephone.

A short time later the father came out of the room and told the officer that on the advice of counsel, the juvenile would not make a statement or respond to questions, but was willing to show the police where the gun was hidden.

The police, at the direction of the juvenile, drove to a location in Attleboro. His parents followed in their automobile. The juvenile, his parents, and several police officers walked along several paths in a dark, wooded area looking for the gun. As the group walked along, the juvenile pointed to various locations and stated, "I dropped it right around here" and "I know it's here."[6] The gun was recovered the next day at a location very close to where the juvenile had indicated he had left it.

The judge ruled that the statements made by the juvenile during the course of the search were made after he and his parents were advised of his Miranda rights, and after consultation with an attorney as well as with both parents. He also ruled that the statements were voluntary and not the product of any interrogation by the police. In addition to the juvenile's claim that he was not given an opportunity to consult with his parents or his attorney, the juvenile also contends that his statements were not voluntary but rather the product of a "functional equivalent" of interrogation, citing *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980).

There was evidence to support the judge's findings that the juvenile was given his Miranda warnings, consulted with his parents and an attorney, and decided *not* to waive his constitutional rights. The statements made in the course of the search were voluntarily made and not solicited by the police. "An unsolicited statement is admissible." *Commonwealth* v. *Mitchell*, 35 Mass. App. Ct. 909, 911 (1993). We reject the juvenile's

---

[6]These two statements were the subject of the juvenile's motion.

argument that any of the police officers' words or actions were "reasonably likely to elicit an incriminating response from the [juvenile]." *Rhode Island* v. *Innis, supra* at 301.

The judge did not commit error in denying the juvenile's motions to suppress his statements.

*Adjudications of delinquency affirmed.*