Commonwealth v. Costa.

Commonwealth vs. Edward J. Costa.

No. 04-P-1319.

Bristol. October 6, 2005. - December 1, 2005.

Present: Grasso, Cowin, & Green, JJ.

*Firearms. Search and Seizure,* Consent. *Consent. Practice, Criminal,* Instructions to jury, Duplicative convictions. *Waiver.*

In a proceeding on a criminal defendant's motion to suppress evidence seized during police officers' search of a motor vehicle, the judge's factual findings, which had support in the record, established that the defendant's consent to search extended to that particular motor vehicle, that there was no confusion regarding the vehicle that was the object of the defendant's consent, and that the defendant's consent was free and voluntary. [231-232]

A criminal defendant could not raise, for the first time on appeal, claims that the failure of the police to provide the defendant with Miranda-like warnings prior to asking whether he had a firearm, and then asking for his consent to a search and for the keys to a motor vehicle, violated the defendant's rights under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. [232-233]

At a criminal trial, the judge's instructions to the jury on the elements of constructive possession of a firearm, which omitted the requirement that the defendant have the intention to exercise control over the firearm, did not give rise to a substantial risk of a miscarriage of justice, where the defendant's intent was not a live issue at trial on the evidence presented. [233-235]

A criminal defendant's convictions of illegal possession of a firearm, G. L. c. 269, § 10(*a*), and unlawful possession of a "large capacity" weapon, G. L. c. 29, § 10(*m*), were duplicative and required that his conviction and sentence on the lesser offense (unlawful possession of a firearm) be vacated. [235]

Indictments found and returned in the Superior Court Department on September 11, 2002.

A pretrial motion to suppress evidence was heard by *John P. Connor,* J., and the cases were tried before *Gary A. Nickerson,* J.

*Dennis M. Powers* for the defendant.

*David B. Mark*, Assistant District Attorney, for the Commonwealth.

GRASSO, J. A jury found the defendant, Edward J. Costa, guilty of unlawful possession of a firearm (G. L. c. 269, § 10[*a*]), unlawful possession of a "large capacity" weapon, and two counts of unlawful possession of a "large capacity feeding device," see G. L. c. 269, § 10(*m*). On appeal, the defendant asserts error in (1) the denial of his motion to suppress physical and testimonial evidence; and (2) the instructions to the jury on the element of "possession." He also maintains, and the Commonwealth concedes, that his conviction of unlawful possession of a firearm is duplicative of his conviction of unlawful possession of a large capacity weapon. We vacate the judgment on the conviction of unlawful possession of a firearm and affirm the remaining judgments.

1. *Background.* Prior to trial, the defendant moved to suppress the essential physical evidence, a loaded nine millimeter handgun and spare ammunition clip seized by the police in a search of a black Chevrolet Silverado pickup truck, as well as any statements or other "fruits" derived from that search. In his supporting affidavit, the defendant asserted that at the time of his arrest, the police asked him if he had a firearm and he replied that he did not. The police then asked permission to search his apartment and his motor vehicle, "which was a 1988 blue GMC [p]ickup truck," and he "gave them permission to search the apartment and that vehicle *only.*" The defendant also asserted that the police later "took keys from my pocket and they searched both the blue GMC truck and the black Silverado [p]ickup truck. The black Silverado truck was not my truck and I informed the police officers that it was not mine."

2. *The suppression issue.* Both the Commonwealth and the judge assumed that the defendant raised and established an expectation of privacy in the black Silverado and focused instead on whether he consented to a search of that vehicle.[1] We do likewise. We summarize the facts found by the motion judge,

---

[1] The defendant's motion and supporting affidavit raised no expectation of privacy in the black Silverado. See *Commonwealth* v. *Clegg*, 61 Mass. App. Ct. 197, 203 (2004) (defendant has initial burden of demonstrating an expectation of privacy in the place searched or item seized). The defendant's failure

which we supplement with uncontested testimony from the suppression hearing. *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 49 (2000). Shortly after midnight on May 3, 2002, Taunton police Officer Mark Brady received a radio dispatch that the Fall River police requested the defendant's arrest for a domestic assault and battery earlier that evening. The dispatch also advised that there was a potential that the defendant had a firearm in his possession.

Officer Brady proceeded to 55 North Pleasant Street, where the defendant resided, to make the arrest. Other officers, including Peter Ferreira and Michael Williams, responded in separate vehicles. As Officers Brady and Ferreira walked up the driveway to the defendant's residence, they observed a man leaving. The man fled at the sight of the officers. After a short chase, an officer apprehended the man and returned him to 55 North Pleasant Street. There, the police learned that the man was not the defendant, but his brother, Joseph Costa.

While the police were talking with Joseph, the defendant emerged from the house and identified himself. Officer Brady arrested the defendant on the Fall River warrant and informed him of the reason for his arrest.[2] Officer Brady handcuffed the defendant and pat frisked him, but found no gun or other weapon. He asked the defendant whether he was in possession of a firearm, and the defendant replied that he was not.

Officer Brady then asked the defendant if he would consent to a search of his apartment and a black Silverado pickup truck that the police had observed in the driveway. The defendant agreed and produced the keys to the apartment and the black Silverado. Officer Williams then searched the black Silverado, where he found a loaded nine millimeter handgun and a spare ammunition clip inside the center console.

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but

to assert an expectation of privacy would have warranted the denial of his motion without a hearing or, at the very least, insistence on a proper affidavit. *Id.* at 203-204.

[2]The defendant was arrested for domestic assault and battery. He was not arrested on firearm charges that evening, but was summonsed into court a couple of months later.

conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). The judge concluded that the defendant "freely and voluntarily" consented to a search of the black Silverado and that there was no confusion regarding the vehicle that was the object of the defendant's consent. The judge also ruled that although the police did not provide the defendant with Miranda-like warnings prior to requesting his consent, the failure to provide such warnings did not render the defendant's consent involuntary. There was no error.

As a threshold matter, we observe that the grounds of the defendant's appeal differ materially from those advanced at the motion hearing. In his motion, the defendant requested suppression under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. He maintained that he only consented to a search of his apartment and his blue GMC pickup truck and that the physical evidence seized must be suppressed because the police had searched the black Silverado without a search warrant and without his consent. The motion also sought suppression of statements that were the "fruit" of that search and seizure. See *Wong Sun* v. *United States*, 371 U.S. 471 (1963).

On appeal, the defendant now maintains that suppression of the physical evidence is required under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. He contends that by inquiring whether he had a firearm, requesting his consent to search, and requesting that he provide the keys to the vehicle without prior Miranda warnings, the police engaged in improper custodial interrogation that requires suppression of his subsequent responses and the physical evidence derived from these unwarned responses.[3] He also continues to press the contention that his consent to search was not freely and voluntarily given, with special

---

[3]At trial, on objection by the defendant, the judge prohibited the Commonwealth from introducing testimony that the police radio dispatch mentioned a firearm, that the police asked the defendant whether he had a firearm, and that the defendant replied that he did not. The correctness of these rulings is not before us.

emphasis on the absence of prior Miranda-like warnings. We conclude that the defendant's arguments for suppression fail.

a. *Fourth Amendment and art. 14.* The voluntariness of the defendant's consent to search was not the focus of his motion to suppress. Rather, his motion and supporting affidavit asserted that he had consented to a search of only his blue GMC, not the black Silverado.[4] The judge's factual findings, which have support in the record, establish that the defendant's consent to search extended to the black Silverado, that there was no confusion regarding the vehicle to which the defendant's permission extended, and that the defendant's consent to search the black Silverado was free and voluntary.[5]

"Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248-249 (1973). See *Commonwealth* v. *Harmond,* 376 Mass. 557, 561 (1978). While lack of knowledge or notice of a right to refuse is, in conjunction with other factors, relevant to the voluntariness inquiry, see *Commonwealth* v. *Angivoni,* 383 Mass. 30, 34-35 (1981); *Commonwealth* v. *Sanna,* 424 Mass. 92, 98 n.10 (1997), here the judge correctly concluded that the defendant's consent to search the black Silverado was voluntary.

A Miranda-like warning is not a necessary prerequisite to a valid consent to search under the Fourth Amendment, see *Ohio* v. *Robinette,* 519 U.S. 33, 39 (1996), or under art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v.

[4]"[T]he grounds on which a suppression motion is based must be stated with particularity in the motion and accompanying affidavit, or, otherwise, be deemed waived. See Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979)." *Commonwealth* v. *Rogers,* 444 Mass. 234, 250 n.3 (2005) (Greaney, J., dissenting).

[5]Because the defendant's motion and supporting affidavit focused only on whether he had given *any* consent to search the black Silverado, the judge's factual findings focus almost exclusively on that issue. "There is no reason for the Commonwealth to extend unnecessarily the length of the suppression hearing by presenting evidence on issues not raised by the defense. When a defendant attempts to raise a new issue after the completion of the hearing's evidentiary phase, the evidence on that issue is likely to be 'scant' or nonexistent." *Commonwealth* v. *Silva,* 440 Mass. 772, 781 (2004).

*Blais*, 428 Mass. 294, 298-299 (1998). The considerations that informed the decision to require Miranda warnings prior to custodial interrogations are inapposite when determining the voluntariness of a consent to search. See *Schneckloth* v. *Busta-monte*, 412 U.S. at 246-247. Moreover, "it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning." *Id.* at 231. See *Ohio* v. *Robinette*, 519 U.S. at 39. Indeed, while consent must be free and voluntary, there is no requirement that it be "knowing and intelligent." See *Schneckloth* v. *Bustamonte, supra* at 248-249; *Commonwealth* v. *Rogers*, 444 Mass. 234, 237 n.4 (2005) (requirement of "knowing and intelligent" waiver of the right to refuse consent would create "artificial restrictions" on police conduct).

b. *Fifth Amendment and art. 12.* On appeal, the defendant argues for the first time that by asking whether he had a firearm, and then asking for his consent to search and for the keys to the vehicle (all without prior Miranda warnings), the police violated his rights under the Fifth Amendment and art. 12. He maintains that these violations require suppression not only of his statements but also of any physical evidence, including the keys to the black Silverado and the items found therein. See *Commonwealth* v. *Martin*, 444 Mass. 213, 215 (2005) (under Massachusetts common law, "evidence, if derived from unwarned statements where Miranda warnings would have been required by Federal law in order for them to be admissible, is presumptively excludable from evidence at trial as 'fruit' of the improper failure to provide such warnings").

As noted, however, the defendant's pretrial motion sought to suppress only those statements that were the "fruit" of an alleged illegal search and seizure.[6] Even broadly read, the defendant's motion and accompanying affidavit cannot fairly be construed as asserting that his Miranda rights were violated or that physical evidence should be suppressed as a result. Nor did he seek to amend his motion to include such claims based on the Fifth Amendment and art. 12 of the Massachusetts Declara-

---

[6]When there is no illegal search and seizure under the Fourth Amendment or art. 14, it follows that there is no poisonous tree of which such statements are "fruit."

tion of Rights (or Massachusetts common law). Contrast *Commonwealth* v. *Martin*, 444 Mass. at 217. The defendant waived these contentions. Accordingly, we need not address whether, in asking the defendant if he had a firearm, the police engaged in custodial interrogation. See *Commonwealth* v. *Morse*, 427 Mass. 117, 122-123 (1998).[7] Nor need we consider the abstract questions whether a police request for consent to search from an individual who is already in custody requires prior Miranda warnings,[8] or whether the defendant's act of production of the keys to the Silverado is a testimonial statement protected by *Miranda* v. *Arizona*, 384 U.S. 436 (1966).[9]

3. *The jury instructions.* At trial, the Commonwealth presented evidence that the defendant constructively possessed the items found in the black Silverado. The Commonwealth's witnesses also related, without objection,[10] that after the defendant was booked and advised of his Miranda rights, he admitted that a friend gave him the firearm because he was self-employed and carried large amounts of cash, and that he did not have a license to carry a firearm.

As part of his defense, the defendant offered evidence that he had no knowledge that the gun was in the black Silverado. He testified as follows: the black Silverado belonged to his ex-girlfriend, Helen Cogswell, and he had only borrowed it the

---

[7]Because the issue is waived, we need not resolve whether the initial police inquiry regarding the firearm fell within the "public safety" exception to the Miranda requirement. See *New York* v. *Quarles*, 467 U.S. 649 (1984); *Commonwealth* v. *Alan A.*, 47 Mass. App. Ct. 271, 273-275 (1999). Nor need we consider whether the discovery of the gun derived from the defendant's negative response to the initial inquiry.

[8]The overwhelming weight of authority is that a police request for consent to search from an individual in custody is not custodial interrogation for purposes of *Miranda* v. *Arizona*, 384 U.S. 436 (1966). See 4 LaFave, Search and Seizure § 8.2(j), at 116-117 (4th ed. 2004).

[9]At trial, the defendant testified that he never produced the keys to the Silverado but, rather, that the police took those keys from him without his consent. He now argues that the act of production of keys to the Silverado in response to a police request is a testimonial admission that followed an unwarned custodial inquiry because his control over the vehicle and knowledge of its contents bore on the element of constructive possession.

[10]In view of our holding that the police inquiry was not a Miranda violation, we need not address the defendant's appellate contention that solicitation of his later Mirandized statements was an exploitation of previous violations. See *Commonwealth* v. *Smith*, 412 Mass. 823, 829-837 (1992).

previous morning in order to move. He did not give the keys to the Silverado to the police; he only gave them the keys to his blue GMC. Shortly after he arrived at the police station, he was transported back to the scene, where Officer Brady reached into the defendant's pocket and took the keys to the Silverado without permission. The defendant maintained, further, that the police fabricated their testimony that he had admitted both that the gun was his and the reason he had obtained it.

The judge's instructions to the jury on the requisite elements of unlawful possession of a firearm included an explanation of constructive possession that tracked instruction 5.60 of the Model Jury Instructions for Use in the District Court (1995): the Commonwealth must prove that the defendant knew that the firearm was in the vehicle and had the power to exercise control over the firearm.[11] Conspicuously absent from the instruction was the requirement that, in addition to knowledge and the ability to exercise control over the firearm, the defendant must have the intention to do so. We agree with the defendant that this omission was error. See *Commonwealth* v. *Sann Than*, 442 Mass. 748, 755 (2004) ("[I]n order to convict the defendant in the absence of evidence of actual physical possession, [the Commonwealth must prove] . . . that the defendant had knowledge of the handgun and had control over it, and, furthermore, that . . . the defendant had both the ability and the intention to exercise control over the handgun").

Because the defendant did not object to the instruction, we consider whether the omission created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Redmond*, 53 Mass. App. Ct. 1, 6-7 (2001). We discern no such risk because the defendant's intent was not a live issue at trial on the evidence presented. Cf. *Commonwealth* v. *Van Winkle*, 443 Mass. 230, 241 (2005) (erroneous instruction on the specific intent element of armed robbery did not give rise to miscarriage of justice where defendant's intent to steal was not a live issue

---

[11]The judge's instruction stated in pertinent part: "[T]he Commonwealth must prove, beyond a reasonable doubt, that a firearm was under the defendant's control in a vehicle. In other words, the Commonwealth must prove that the defendant knew that the firearm was there and that he had power to exercise control over the firearm."

at trial). No reasonable view of the evidence would permit the jury to find that the defendant knew the weapon was in the vehicle but did not intend to exercise control over it. Were the jury to accept the defendant's position, that he did not know the gun was in the vehicle and that the police fabricated his admission, the Commonwealth would fail to prove both the defendant's knowledge and his intent. If, on the other hand, the jury were to accept the Commonwealth's contention — that the defendant knew that the items were in the vehicle and acknowledged to police that he had acquired them and his reason for doing so — the requisite proof that he intended to possess and exercise control over them was necessarily subsumed within his acknowledgment.

4. *Duplicative convictions.* The Commonwealth has correctly conceded that the defendant's convictions of illegal possession of a firearm and of illegal possession of a large capacity weapon are duplicative because the former is a lesser included offense of the latter. The only difference between the two violations is the "capacity" of the firearm. "The appropriate remedy for duplicative convictions, so as to prevent multiple punishments, is to vacate both the conviction and sentence on the lesser included offense, and to affirm on the more serious offense." *Commonwealth* v. *Valliere*, 437 Mass. 366, 371-372 (2002).

Accordingly, on the indictment charging unlawful possession of a firearm under G. L. c. 269, § 10(*a*), the judgment is vacated, the verdict is set aside, and the indictment is to be dismissed. On the indictments charging unlawful possession of a large capacity weapon and unlawful possession of a large capacity feeding device under G. L. c. 269, § 10(*m*), the judgments are affirmed.

*So ordered.*