NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-736

COMMONWEALTH

vs.

TAYARI T. CUNNINGHAM.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from the denial of his motion to suppress, which sought to suppress evidence arising out of the defendant's arrest in January of 2023 and the subsequent warrantless search of his apartment. On the day in question, the New Bedford police went to the defendant's apartment and knocked on the door, after receiving a report from the nearby Fall River police department that the defendant had threatened to get his gun and shoot the mother of his child. After the defendant stepped outside, the police handcuffed the defendant and removed him downstairs to a police cruiser. Without providing Miranda warnings, the police questioned the defendant, who told the police (1) that he had a rifle, and (2) that he

consented to the police entering his apartment to retrieve the gun.  The police then did so, seizing an AR-15 rifle and two magazines of ammunition.

After an evidentiary hearing, a District Court judge denied the defendant's motion to suppress the gun, the ammunition, and the defendant's statements.  The motion raises separate questions as to whether any exceptions to the warrant requirement apply under the circumstances, and also whether any exceptions to the dictates of Miranda v. Arizona, 384 U.S. 436 (1966) and its progeny apply under the circumstances.  As to the Miranda issues involving the defendants' statements, we affirm the denial of the suppression motion.  As to the warrantless search that located the rifle, however, the record is not sufficient for us to rule.  We accordingly vacate the denial as to that issue, and remand the motion for further proceedings consistent with this decision.

Background.  "We summarize the facts found by the motion judge following the evidentiary hearing, supplemented where necessary with undisputed testimony that was implicitly credited by the judge."  Commonwealth v. Oliveira, 474 Mass. 10, 11 (2016).  On January 20, 2023, the mother of the defendant's child reported to the Fall River police department that the defendant was travelling to New Bedford to retrieve an assault rifle, and that he had threatened to return to Fall River and

2

shoot her.  The Fall River police informed the New Bedford police of the report.  Three or four New Bedford police officers responded to the defendant's apartment and knocked on the door.

Two witnesses testified at the hearing: Officer Hiram Sanchez of the New Bedford police department, and Shardaye Todman, the defendant's roommate.  After the police officers knocked on the door, the defendant opened the door and the officers asked him to step outside; once the defendant did so, the officers arrested him and handcuffed him, then brought the defendant downstairs and placed him in a police cruiser.  Todman was present outside the apartment, and followed the defendant and the officers downstairs.[1]

Officer Sanchez arrived on the scene as the other officers were bringing the defendant downstairs.  Once the defendant was in the police cruiser, Officer Sanchez began questioning the defendant, without first providing Miranda warnings.  Officer Sanchez told the defendant "the reason that we were there and that Fall River did mention he had a firearm[,] and I asked him if this was true."  The defendant responded that he "[did] have a rifle."  Officer Sanchez then told the defendant that the officers were concerned about the danger presented by the

_____

[1] Todman testified that following the defendant's arrest, she, the defendant, and the officers were "upstairs for a[]while before [the officers] took [the defendant] down."

3

firearm; he asked the defendant several times for consent to enter the apartment and seize the rifle.  As discussed below, the record is not clear as to whether Officer Sanchez knew, at the time he asked for consent, that there were other occupants in the apartment, although the officers did learn at some point that there was at least one other roommate (in addition to Todman) who was inside.[2]  The defendant eventually gave the police permission to enter, and told Todman, who was then standing next to the cruiser, to turn the rifle over.[3]  Todman led Officer Sanchez to a bedroom inside the apartment.  Officer Sanchez recovered an AR-15 rifle with two loaded magazines from under the bed.

The judge did not make findings as to other occupants of the apartment, but it is undisputed that at least one roommate other than Todman was in the apartment.  As indicated, however, it is not clear from the testimony when the officers learned of the presence of these roommates.  On direct examination, Officer

---

[2] Todman testified that the third roommate was present "[w]hen the police tried to get into the apartment."

[3] Testimony differed as to the circumstances of the defendant's consent.  Officer Sanchez testified that he "was talking to [the defendant] normal" when questioning him, and when asked whether "[any]one was yelling . . . screaming[,] or otherwise animated," answered no.  In contrast, Todman testified that when the defendant consented to the search, "[the defendant] was very upset."

Sanchez testified that there were others in the apartment, "[a] male and . . . another female party."[4]  On cross examination, Officer Sanchez testified that he asked for permission to enter the apartment "due to exigent circumstances, you know[,] the firearm could be unsecured and there were multiple people inside the apartment."  Officer Sanchez did not provide the basis for his reference to "multiple people inside," nor did he state when he became aware of the other roommates.

The defendant's motion to suppress was denied following an evidentiary hearing.  The defendant thereafter entered a conditional guilty plea to possession of a firearm without a firearm identification (FID) card, G. L. c. 269, § 10 (h) (1); possession of ammunition without an FID card, G. L. c. 269, § 10 (h) (1); and improper storage of a firearm, G. L. c. 140, § 131L (a) & (b).  The defendant reserved his right to appeal the denial of his motion to suppress.[5]

_____

[4] It is not clear whether this "female party" was Todman, or a fourth roommate.

[5] The writing submitted by the parties at the time of the plea complied with the requirement of Mass. R. Crim. P. 12 (b) (6) that it "specify the ruling or rulings that may be appealed" but did not comply with the requirement that it "must state that reversal of the ruling or rulings would render the Commonwealth's case not viable on one or more specified charges."  Here, the Commonwealth stated in writing after the appeal was entered that "the Commonwealth could not prove any of the charges if a motion to suppress were allowed," thus remedying the defect.  Trial judges are reminded that they

Discussion. 1. The Miranda issue. The defendant contends that the Miranda doctrine requires suppression of his responses to Officer Sanchez's questioning. There are two statements at issue: the defendant's admission that he had a gun, and his consent to search the apartment. We consider each in turn.

a. The admission. It is uncontested that the defendant's admission that he had a gun resulted from a custodial interrogation, in which no Miranda warnings were given. See Commonwealth v. Loadholt, 456 Mass. 411, 417 (2010), vacated on other grounds, 562 U.S. 956, S.C., 460 Mass. 723 (2011) ("Generally speaking, when a defendant is in custody, any statement made by the defendant as a result of police interrogation is inadmissible unless it is preceded by Miranda warnings"). However, the Commonwealth argues that the admission need not be suppressed, citing to the holdings of the Massachusetts and Federal courts that in circumstances presenting a threat to the public safety, "the police may ask questions 'necessary to secure their own safety or the safety of the public' without giving Miranda warnings."[6] Loadholt, supra,

---

should not accept a conditional plea without first obtaining compliance with Mass. R. Crim. P. 12 (b) (6).

[6] The Commonwealth did not argue to the motion judge that the public safety exception applied. However, "[w]e may affirm the denial of a motion to suppress on any ground supported by the record." Commonwealth v. Washington, 449 Mass. 476, 483 (2007).

quoting New York v. Quarles, 467 U.S. 649, 659 (1984). In determining whether the public safety exception applies, we do not evaluate the subjective motivation of the officers; instead, we look to whether the police questioning related to "an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon," rather than questioning for an investigatory purpose. Quarles, 467 U.S. at 656, 659 n.8. See Commonwealth v. Kitchings, 40 Mass. App. Ct. 591, 598 (1996).

Our courts have applied the public safety exception under similar factual circumstances to the case at bar. For example, in Loadholt, officers arrested the defendant in his apartment on three warrants, one of which was for assault and battery by means of a dangerous weapon (firearm). Loadholt, 456 Mass. at 413-414. A woman and child were in the apartment at the time of the arrest. Id. at 414. The officers handcuffed the defendant and frisked him, finding a live round of ammunition in the defendant's pocket. Id. At that point an officer asked, "Where's the gun?" and the defendant told him. Id. at 414-415. The court held that the public safety exception applied, noting, among other factors, that the live round of ammunition suggested an immediate threat to the officers and other occupants of the apartment, and that "the entire apartment had not yet been

cleared, so the officers did not know if other individuals were present."  Id. at 419.

Similarly, in Commonwealth v. Alan A., 47 Mass. App. Ct. 271, 272 (1999), the police received reports that a juvenile had run away from home with his father's gun, and that the gun was loaded.  Id.  Subsequently the police received a report that the juvenile was present in his friend's home.  Id. at 272-273.  The police entered the juvenile's friend's house, drew their weapons, ordered the juvenile to lie on the floor, handcuffed him, and asked, "Where's the gun?" to which the juvenile responded, "I don't have it anymore."  Id. at 273.  The court affirmed the judge's application of the public safety exception. Id. at 274-275.  In so holding, the court emphasized, among other factors, that "the police knew the defendant had been in recent possession of a loaded gun," and that at the time of questioning "the police had not searched the house and, therefore, did not know if the gun was still on the premises or if anyone else, other than [the friend], was in the house."  Id.

In the present case, the New Bedford police received a report from the Fall River police that the defendant possessed an assault rifle, and that he had recently threatened to shoot someone with it.  The officers did not know the location of the rifle, or whether it might be accessible to the defendant or others.  Although the defendant was in custody at the time of

questioning, the officers had not yet searched the apartment and thus had not confirmed if there was anyone else in the apartment and whether those people (possible friends of the defendant) had access to an assault rifle. These circumstances presented an objectively reasonable public safety risk justifying Officer Sanchez's question regarding the gun. See Loadholt, 456 Mass. at 419; Alan A., 47 Mass. App. Ct. at 274-275. Contrast Commonwealth v. Martin, 444 Mass. 213, 217 n.2 (2005) (suggesting public safety exception would not apply where "[defendant] was in custody; his apartment was swept and secured by the police; and there was no basis to conclude that the firearm was anywhere other than in the apartment, for which the police intended promptly to secure a search warrant").

b. The consent. The defendant's motion to suppress also encompasses the statements he gave that consented to the search. However, "[t]he overwhelming weight of authority is that a police request for consent to search from an individual in custody is not custodial interrogation for purposes of [Miranda]." Commonwealth v. Costa, 65 Mass. App. Ct. 227, 233 n.8 (2005). As the police did not violate Miranda by asking for consent to enter the defendant's apartment, the answer itself is admissible. See id.

2. The warrantless search. The defendant also argues that the guns and ammunition must be suppressed as the fruit of an

illegal search.  Ordinarily, of course, the police may not search a home unless they first obtain a warrant.  Commonwealth v. Arias, 481 Mass. 604, 609 (2019), quoting Commonwealth v. Entwistle, 463 Mass. 205, 213 (2012) (warrantless search of home "presumptively unreasonable" under State and Federal constitutions).  There are certain narrow exceptions to this requirement, established in the case law.  Before the motion judge, the Commonwealth argued that the defendant consented to the search; before this court, the Commonwealth also argues that there were exigent circumstances justifying the warrantless entry and search.  We address each argument in turn.

a.  Consent.  The Commonwealth argues that the search was authorized by the defendant's voluntary consent and therefore valid.  See Commonwealth v. Buckley, 478 Mass. 861, 875 (2018).  "The question whether consent was voluntary is a question of fact to be determined in the circumstances of each case, with the burden of proof on the government."  Commonwealth v. Carr, 458 Mass. 295, 302 (2010), quoting Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976).  "The Commonwealth must prove consent unfettered by coercion, express or implied, and also something more than mere acquiescence to a claim of lawful authority" (quotation and citation omitted).  Carr, supra.  Relevant factors include, but are not limited to, "the presence of armed, uniformed officers; whether the defendant was informed of his

10

right to refuse consent; the age, intelligence, and other personal characteristics of the defendant; and whether the defendant was in custody when consent was given." Id.

In the present case, the judge made no factual findings as to the voluntariness of the defendant's consent. The circumstances were potentially coercive, such that findings were needed. The defendant was handcuffed, in a police cruiser, with several uniformed officers present. Furthermore, the testimony differed as to some relevant circumstances -- Officer Sanchez testified that no one was "yelling," "screaming," or "otherwise animated," while Todman stated that the defendant was "very upset." Accordingly, we remand for further factual findings on the issue of the voluntariness of consent, and for reconsideration of the consent issue in light of these findings. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 437 (2015) ("In the absence of findings on a critical issue . . . remand may be appropriate").

b. Exigency. The Commonwealth also argues that the denial of the motion to suppress may be affirmed because the search was justified by the exigency exception. "To support such a search, 'the Commonwealth must demonstrate that the police had probable cause and were faced with exigent circumstances such as danger to their lives, danger to the lives of others, or the destruction of evidence, such that it would be impracticable to

obtain a warrant.'" Loadholt, 456 Mass. at 422, quoting Commonwealth v. Moore, 54 Mass. App. Ct. 334, 338 (2002). "The existence of an exigency depends on an evaluation of all the circumstances as they appeared to the police at the time of the search and seizure." Loadholt, supra.

Although the police had probable cause to believe the gun was in the apartment, the judge did not make any findings as to the existence of an exigency, and here there are factual issues bearing on exigency that must be resolved before the court can rule. As the Supreme Judicial Court observed in Commonwealth v. DeJesus, 439 Mass. 616, 623-624 (2003), in the context of a search of a defendant's residence following the defendant's arrest, there is "an obvious prerequisite" to the existence of an exigency -- whether the officers had "an objectively reasonable belief that someone is inside." The judge made no factual findings as to the state of the officers' objectively reasonable belief, at the time of the warrantless entry, as to whether another roommate was present. While Officer Sanchez testified that prior to entry he knew "there were multiple people inside the apartment," Officer Sanchez did not identify the basis for this knowledge and the judge did not make a finding on that issue. Furthermore, there is a factual issue as to whether an exigency actually existed at the time of entry, as the officers waited for some time (the record is not clear how

12

long) before entering the apartment.  See Commonwealth v. DiGeronimo, 38 Mass. App. Ct. 714, 723, 726-727 (1995) (no exigency where, among other factors, officer stayed at scene of accident for almost an hour before proceeding to home of driver); Commonwealth v. Bates, 28 Mass. App. Ct. 217, 220 (1990), citing State v. Beede, 119 N.H. 620, 627-629 (1979), cert. denied, 445 U.S. 967 (1980) ("emergency can disappear with the passage of time").  Accordingly, we remand for the judge to consider the exigency issue in the first instance, including further factual findings as necessary.

Conclusion.  We affirm so much of the judge's order denying the motion to suppress the defendant's statements.  We vacate so much of the order denying the motion to suppress the fruits of

the warrantless search, and remand the matter for further proceedings consistent with this decision.[7]

> So ordered.
>
> By the Court (Desmond, Ditkoff & Englander, JJ.[8]),
>
> *Paul Little*
>
> Clerk

Entered: July 11, 2025.

---

[7] If the judge ultimately decides that the physical evidence should be suppressed, we leave it to the judge to proceed under Mass. R. Crim. P. 12 (b) (6) and allow the defendant the opportunity to withdraw his guilty pleas.

[8] The panelists are listed in order of seniority.